**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| LISA B.[1], | Case No. EDCV 20-139-AS |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's decision is affirmed.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**Proceedings**

On January 16, 2020, Plaintiff filed a Complaint seeking review of the denial of her applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of Social Security ("Commissioner"). (Dkt. No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 12, 13). On June 17, 2020, Defendant filed an Answer along with the Administrative Record ("AR"). (Dkt. Nos. 15, 16). The parties filed a Joint Stipulation ("Joint Stip.") on October 21, 2020, setting forth their respective positions regarding Plaintiff's claims. (Dkt. No. 19).

The Court has taken this matter under submission without oral argument. See C.D. Cal. C. R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On October 12, 2016, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of March 10, 2013. (AR 307-19). The Commissioner denied Plaintiff's application initially and on reconsideration. (AR 225-42). On December 3, 2018, Plaintiff, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") Joel Tracy. (AR 128-60). The ALJ also heard testimony from Sandra M. Fioretti, a vocational expert ("VE"). (AR 151-58). On January 30, 2019, the ALJ issued a decision denying Plaintiff's application. (AR 97-113).

2

Applying the five-step sequential process, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since March 10, 2013, the alleged onset date. (AR 103). At step two, the ALJ found that Plaintiff had the following severe impairments: bilateral hip osteoarthritis, diabetes mellitus, chronic pain syndrome, discopathy of the cervical spine status-post C4-C7 anterior cervical discectomy and fusion, degenerative disc disease of the lumbar spine, bilateral shoulder osteoarthritis, bilateral lateral epicondylitis, seropositive rheumatoid arthritis, asthma, polyarticular arthritis, status-post bilateral carpal tunnel syndrome, left trigger thumb, and status-post right shoulder arthroscopy.[2] (Id.). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations.[3] (AR 106).

---

[2] The ALJ found that Plaintiff's obesity, hypertension, dyslipidemia, Hashimoto's thyroiditis, gastroesophageal reflux disease ("GERD"), status-post gallbladder removal, ovarian cyst, status-post gastric sleeve and cholecystectomy, and depressive disorder did not significantly limit her ability to perform basic work activities and therefore were nonsevere. (AR 103-05). The ALJ also found that there was a lack of objective medical evidence to substantiate the existence of Plaintiff's fibromyalgia as a medically determinable impairment. (AR 106).

[3] Specifically, the ALJ considered whether Plaintiff meets the criteria of Listing 1.02 (major dysfunction of a joint(s)), 1.04 (disorders of the spine), 3.03 (asthma), and 14.09 (inflammatory arthritis). (AR 106). The ALJ also considered Plaintiff's diabetes mellitus under a variety of listings for other body systems. (Id.).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[4] and concluded that she has the capacity to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a) and 416.967(a),[5] with the following exceptions:

> [Plaintiff] can frequently handle, finger, push, and pull below shoulder level with the bilateral upper extremities. [Plaintiff] can occasionally reach overhead with the bilateral upper extremities. [Plaintiff] can occasionally crouch, kneel, stoop, crawl, balance, and climb ramps and stairs. [Plaintiff] can never climb ladders, ropes, and scaffolds. [Plaintiff] can occasionally tolerate exposure to pulmonary irritants, such as dusts, odors, fumes, and chemicals. [Plaintiff] must avoid unprotected high places and heavy machinery with unprotected moving parts.

(AR 107).

At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a legal secretary. (AR 111).

---

[4] A Residual Functional Capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

Alternatively, based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including charge account clerk, addresser, and final assembler. (AR 112-13). Accordingly, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 10, 2013, the alleged onset date, through the date of the decision. (AR 113).

Plaintiff submitted additional evidence to the Appeals Council. (AR 16-96). On November 22, 2019, the Appeals Council denied Plaintiff's request for review. (AR 1-6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result,

"[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

Plaintiff claims that the ALJ failed to properly consider the opinion of treating physician Dr. Michael Harris. (Joint Stip. at 4-12, 16-18). After consideration of the parties' arguments and the record as a whole, the Court finds that the ALJ did not err.

**A.   Legal Standard for ALJ's Assessment of Medical Opinions**

An ALJ must take into account all medical opinions of record. 20 C.F.R. § 404.1527(b).[6] "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). The medical opinion of a treating physician is given

---

[6] Since Plaintiff filed her applications before March 27, 2017, 20 C.F.R. § 404.1527 applies. For an application filed on or after March 27, 2017, 20 C.F.R. § 404.1520c would apply. 20 C.F.R. § 404.1520c changed how the Social Security Administration considers medical opinions and prior administrative medical findings, eliminated the use of the term "treating source," and eliminated deference to treating source medical opinions. See 20 C.F.R. § 404.1520c(a); Danny L. R. v. Saul, 2020 WL 264583, at *3 n.5 (C.D. Cal. Jan. 17, 2020); see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).

"controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency of the record." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017); see also 20 C.F.R. § 404.1527(c)(2)-(6).

If a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons." Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1164 (9th Cir. 2008); Lester, 81 F.3d at 830. If the treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" that are supported by substantial evidence in the record for rejecting the opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citation omitted).

**B. ALJ's Assessment of Dr. Harris' Opinion**

    **1. Dr. Harris' Opinion**

Dr. Michael Harris, a physician at Cedars Sinai Medical Group, was reportedly Plaintiff's primary care physician for 20 years, but Plaintiff testified that she stopped receiving care from Dr. Harris during a period of time when she moved. (AR 158-59). Plaintiff's medical record reflects treatment from Dr. Harris in 2013, as well as consistently from 2017 through 2019. (See AR 634, 637, 644, 672, 680, 687).

On November 30, 2018, Dr. Harris completed a medical source statement via a check-box form. He opined that Plaintiff could lift less than 10 pounds both on an occasional and frequent basis. (AR 822). He found that she could sit, stand, and walk for a maximum of two hours during an eight-hour workday, and she could only sit or stand for 15 minutes before needing to change positions. (Id.). Every 20 minutes, she must walk around for 10 minutes. (AR 823). She needs the opportunity to shift at will from sitting to standing or walking, and she will sometimes need to lie down at unpredictable intervals during a work shift. (Id.).

Dr. Harris further opined that Plaintiff could twist, stoop (bend), crouch, climb stairs, and climb ladders only occasionally, which was defined on the form as "very little or up to one-third of an eight hour day." (Id.). He found that Plaintiff's impairments affected her ability to reach (including overhead),

handle, finger, feel, and push and pull. (Id.). He further found that her impairments required limits on kneeling and crawling. (AR 824). With regards to environmental restrictions, he opined that she did not require any restrictions due to humidity or noise; she needed to avoid concentrated exposure to extreme heat, avoid even moderate exposure to extreme cold and wetness, and avoid all exposure to fumes, odors, dusts, gasses, and poor ventilation and hazards, including machinery and heights. (Id.). Finally, Dr. Harris opined that Plaintiff would be absent from work more than three times a month due to her impairments or treatment. (Id.).

**2. The ALJ's Findings**

The ALJ gave little weight to Dr. Harris' opinion. (AR 110). The ALJ noted that Dr. Harris' opinion was "not supported by a narrative to detail the basis behind the extreme limitations," and he found that Dr. Harris' treatment notes did "not support the extreme limitations" he opined. (Id.). The ALJ further cited to a treatment note reflecting resolution of Plaintiff's arm symptoms. (Id.). Although not specifically identified by the ALJ as a basis for rejecting the opinion, Dr. Harris' opinion was contradicted by the opinions of the consultative examiner and state agency reviewing physicians. (See id.). Thus, the ALJ was required to state specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Harris' opinion. See Trevizo, 871 F.3d at 675.

### a.  Check-box Form

As an initial matter, the ALJ correctly noted that Dr. Harris' opinion, which was completed as a check-box form, did not include any narrative detail or explanation for the diagnoses and clinical findings underlying his assessments. An ALJ may properly discount a treating physician's opinion that is "conclusory, brief, and unsupported by the record as a whole." Batson v. Comm'r, 359 F.3d 1190, 1195 (9th Cir. 2004). Indeed, an ALJ may "permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions." Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996). Where a treating physician's opinion is in a check-box form that is supported by the physician's experience with the plaintiff and the medical record, however, it is "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." Garrison, 759 F.3d at 1013; see also Esparza v. Colvin, 631 F. App'x 460, 462 (9th Cir. 2015) ("Although the treating physician's opinions were in the form of check-box questionnaires, that is not a proper basis for rejecting an opinion supported by treatment notes.").

Here, the ALJ's finding was supported by substantial evidence. Dr. Harris had an extensive history of treating Plaintiff, and Plaintiff's medical record contains treatment notes from both Dr. Harris and other specialists at Cedars-Sinai documenting her many physical impairments, including diabetes and rheumatoid arthritis, but the medical record largely does not support Dr. Harris' opinion regarding Plaintiff's limitations. Notably, there is no record

support for Dr. Harris' restrictions regarding Plaintiff's ability to sit, stand/walk, and lay down during an eight-hour workday and her need to miss three or more workdays per month due to her impairments. Plaintiff argues that Dr. Harris' opinion is supported by clinical findings from a nuclear medicine bone scan and MRI indicating moderate increased activity in multiple peripheral joints consistent with degenerative disc disease, degenerative changes in her lumbosacral joint and her lumbar spine, left paracentral disc herniation with annular tear that encroaches on the descending left S1 nerve root, and spinal stenosis from L2-3 through L5-S1. (Joint Stip. at 11). Although these records indicate that Plaintiff had rheumatoid arthritis and degenerative disc disease of the lumbar spine, which the ALJ found to be severe impairments, Plaintiff does not explain how these records support the significant limitations assessed by Dr. Harris.

The Court finds that the conclusory nature of Dr. Harris' opinion and absence of record support is a specific and legitimate reason supported by substantial evidence to discount Dr. Harris' medical source statement.

**b. Inconsistent Treatment Notes**

The ALJ further rejected Dr. Harris' opinion because it was inconsistent with his treatment notes about Plaintiff's rheumatoid arthritis. (AR 110). An ALJ may properly reject a treating physician's opinion that is not supported by his treatment notes. See Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003)("We hold

11

that the ALJ properly found that [the treating physician's] extensive conclusions regarding [the claimant's] limitations are not supported by his own treatment notes."); see also Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ's rejection of the treating physician's opinion was proper because the physician's own clinical notes contradicted his opinion).

The ALJ noted that Dr. Harris reported that Plaintiff's rheumatoid arthritis was in "clinical remission" in a January 2018 treatment note, (AR 110, 682), and the record does not indicate any further discussion by Dr. Harris about the status of Plaintiff's rheumatoid arthritis. (See AR 687-89, 696-97). To the extent that Dr. Harris relied on Plaintiff's rheumatoid arthritis in determining Plaintiff's functional limitations – which the parties do not disagree about – his January 2018 treatment note about Plaintiff's rheumatoid arthritis was inconsistent with his opinion assessing significant limitations.

Plaintiff contends that her rheumatoid arthritis was not in remission at the time Dr. Harris rendered his November 2018 opinion, and therefore there was no inconsistency between his treatment notes and opinion. (Joint Stip. at 7-9). This argument fails. In July 2018, Plaintiff reported to Dr. Gopika Miller, a rheumatologist, that she was having a flare-up of her rheumatoid arthritis symptoms, including swelling of her hand joints and ankles, morning stiffness, exhaustion, and increased asthma attacks. (AR 689-90). Dr. Miller's treatment notes reflect that Plaintiff received an injection and medication to help treat the

flare-up, after which Plaintiff reported feeling better and showed improvement in her symptoms. (AR 695-96, 699, 704). Dr. Miller's treatment notes reflect that Plaintiff's rheumatoid arthritis flare-up had improved with treatment by October 2018, over a month before Dr. Harris' opinion. (See AR 696, 699, 704). Thus, Dr. Miller's treatment notes about Plaintiff's improved rheumatoid arthritis flare-up do not resolve any inconsistency between Dr. Harris' treatment notes and his opinion, and the ALJ's finding was supported by substantial evidence.

**c. Inconsistent with the Medical Record**

Finally, in rejecting Dr. Harris' opinion, the ALJ appears to discuss an inconsistency between Dr. Harris' opinion and the medical record regarding improvement in Plaintiff's arm symptoms.[7] (AR 110). An ALJ may properly reject a treating physician's opinion where the opinion is inconsistent with the medical record. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes); Batson, 359 F.3d at 1195 (ALJ may discredit treating

---

[7] The ALJ does not explain his reasoning behind this citation to the medical record. (See AR 110). However, the ALJ reviewed Plaintiff's medical record prior to discussing evidence of her improved arm symptoms in his assessment of Dr. Harris' opinion, which, as the ALJ noted, included manipulative limitations. (AR 109-10). Thus, the Court can reasonably infer that the ALJ found Dr. Harris' opinion to be inconsistent with Plaintiff's medical record. See Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (internal quotations omitted).

13

physician's opinion that is unsupported by the record as a whole or by objective medical findings).

Here, the ALJ noted that Plaintiff reported a "complete resolution of her arm symptoms" following a "C4-C7 anterior cervical discectomy and fusion." (AR 110). Specifically, in November 2017, Plaintiff told a rheumatologist, Dr. Jana Posalski, that she "almost has had complete resolution of her arm symptoms" after her cervical spine surgery. (AR 675). Following this report, Plaintiff's medical record does not reflect any significant issues with her upper extremities. At most, the record indicates that Plaintiff had an already-scheduled surgery on her right shoulder in November 2017 that appears to have gone well, and she had swelling of her hand joints due to her rheumatoid arthritis flare-up which improved with treatment by October 2018. (AR 678, 690, 699). Indeed, after Plaintiff reported near resolution of her arm symptoms, Dr. Harris' only mention of Plaintiff's upper extremities was to indicate that she felt "less pain" in her right shoulder and she was positive for a tremor. (AR 680, 697). Nevertheless, Dr. Harris opined, in November 2018, that Plaintiff's ability to reach, handle, finger, feel, and push and pull would be affected by her impairment. (AR 823). Thus, Dr. Harris' assessment of Plaintiff's upper extremity limitations is not consistent with the medical record reflecting overall resolution of Plaintiff's arm symptoms, and the ALJ's finding is supported by substantial evidence.

Accordingly, the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Harris' opinion, and Plaintiff has not shown error.

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 25, 2021

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE